# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CARL EZEKIEL WOODS,

        Petitioner,

v.                                    Case No. 3:21-cv-316-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

---

# ORDER

## I.   Status

Petitioner, an inmate of the Florida penal system, initiated this action through counsel by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1). He also filed a counseled Memorandum of Law in Support of his Petition (Doc. 4). Petitioner challenges a state court (Duval County, Florida) judgment of conviction for first degree murder, armed robbery, and armed burglary. See id. at 1. Petitioner is serving life imprisonment. Respondents filed a Response (Doc. 11; Response) with exhibits (Docs. 11-1 to 11-17; Ex.). Petitioner filed a Notice, through counsel, indicating that he would not file a reply (Doc. 13). This case is ripe for review.[1]

---

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318

## II.   <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>,

---

(11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could

disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate

review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope</u> <u>v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the """opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."" <u>Duncan v.</u> <u>Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan</u> <u>v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine

of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747–748, 111 S. Ct. 2546; Sykes,[3] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Even though a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome,

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

[3] Wainwright v. Sykes, 433 U.S. 72 (1977).

6

> 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

Without a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir.

---

[4] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

7

2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to

8

show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc)

9

(Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III.   <u>Analysis</u>

#### A. Ground One

Petitioner argues that his trial counsel was ineffective for failing to object to the standard jury instructions on stand your ground and for failing to request a special jury instruction concerning common law self-defense and the duty to retreat for an individual engaged in unlawful activity. Doc. 1 at 5. Petitioner explains that because he was participating in an unlawful activity (a drug transaction) at the time deadly force was used, the standard jury instruction on stand your ground did not apply and counsel should have requested a special jury instruction concerning common law self-defense. Doc. 4 at 18.

Petitioner, through counsel, raised this claim in his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. The state court held an evidentiary hearing, after which it denied the claim, reasoning as follows:

> In Ground One of his motion, Defendant argues his trial attorney was ineffective because he failed to move for a common law self-defense jury instruction. The common law self-defense jury instruction that Defendant contends his attorney should have requested reads:
>
>> If you find the defendant was engaging in an unlawful activity or was attacked in a place where he did not have the right to be, then you must consider if

the defendant had a duty to retreat. If the defendant was in a position of imminent death or great bodily harm and it would have increased his own danger to retreat, then his use of force likely to cause death or great bodily harm was justifiable.

The jury found Defendant guilty of first-degree murder, as charged in the indictment. In addition, the jury made special findings concerning the nature of the murder. The jury found both that Defendant's killing of the victim was premeditated and that the killing was done during the commission of a burglary or robbery. The jury's finding that Defendant committed premediated murder belies any claim that Defendant's proposed common law self-defense jury instruction would have changed the outcome of Defendant's case. Simply stated, there is no way to reconcile a finding of premeditation with a finding of justifiable self-defense. "Premeditation" requires a finding that a defendant had "intent before the act," i.e., "a fully formed purpose to kill, with enough time for thought . . . ." Powell v. State, 112 So. 608, 610 (Fla. 1927). Even if the jury was equipped with Defendant's proposed instruction, it follows a fortiori that the jury would not have found Defendant acted in self-defense because the jury found that Defendant acted with a fully formed, pre-existing intent to kill the victim. As such, Defendant cannot prove prejudice as required by Strickland. Accordingly, this Court denies Ground One of Defendant's motion.

Ex. H at 106-07 (internal record citations omitted and citations modified).

Through counsel, Petitioner appealed the denial of his Rule 3.850 motion. Petitioner filed an initial brief, Ex. I, the state filed a response, Ex. J, and Petitioner filed a counseled reply, Ex. K. The First District Court of Appeal affirmed the denial and issued the following written opinion:

Carl Woods appeals the trial court's denial of his motion for postconviction relief after an evidentiary hearing. He presents three arguments, all relating to jury instructions he claims his trial counsel was ineffective for failing to request. We affirm and write only to address the first argument: whether trial defense counsel should have requested a jury instruction on common law self-defense.

. . .

After a 2016 jury trial, Woods was found guilty and convicted of first-degree murder, armed robbery, and armed burglary. The convictions stemmed from an incident that Woods testified was a drug deal gone bad.

Woods claimed he was the middleman between Rolando Valencia, a drug dealer, and his roommate Xavier Davis. He testified the drug transaction was to take place in Valencia's apartment. When they arrived, Woods introduced Valencia and Davis. Then, inexplicably, after a "split second" Valencia and Davis became engaged in a violent physical encounter. Furniture was knocked over and Woods saw Valencia and Davis with guns out trying to shoot one another. Woods testified this turn of events was unexpected and he was only trying to watch Valencia's television. But because the other two were attempting to shoot one another, Woods thought it best to approach them in an effort to break up the fight. Shots rang out and Woods believed he had been struck by a bullet.[FN1] Though he had not anticipated a firefight, he had indeed brought along his own firearm. He did not know who shot him. Nevertheless, Woods testified he drew his firearm, approached Valencia who was up against a wall in a corner of the room fending off an attacking Davis, reached around Davis who was standing between them, pressed the barrel of his gun against Valencia and pulled the trigger—in self-defense. Davis and Woods then fled the scene together. Neither called

to report the incident. To avoid disclosing his involvement by going to a hospital, Woods stated he had a friend remove the bullet from his leg.[FN2]

> FN1. Woods later testified he was not sure if he had been struck by a bullet.

> FN2. Woods showed the jury a mark on his leg and testified it was the location of his injury.

Woods acknowledged he was engaged in criminal activity—facilitating the purchase and sale of illicit drugs—when he shot Valencia. The State sought to disprove the self-defense claim and put on strong circumstantial evidence that Woods intended to rob and murder Valencia.

The jury found Woods guilty on all three charges. On the murder charge, it found him guilty on theories of premeditation and felony murder. It found Woods committed the murder during the commission of a burglary or robbery. It found Woods guilty of burglary, necessarily finding Woods entered Valencia's apartment or remained therein with criminal intent to commit another offense. It also found Woods guilty of robbery, that he carried a firearm while committing the offense, and that he discharged the firearm during the commission of the robbery causing death or great bodily harm. Woods appealed his convictions and they were affirmed by this Court. He subsequently filed a postconviction motion.

. . .

In his postconviction motion, Woods claimed his trial defense counsel provided ineffective assistance by failing to request a jury instruction on common law self-defense as it pertains to a person engaged in an unlawful activity. This instruction can be given when

13

a defendant admits being engaged in unlawful activity but is forced to act in self-defense. <u>Dorsey v. State</u>, 74 So. 3d 521, 527 (Fla. 4th DCA 2011) ("[W]here, as here, a defendant was engaged in an unlawful activity or was in a place where he did not have a right to be at the time he was attacked, the common law duty to retreat still applies."). Florida abrogated the common law duty to retreat in all circumstances except when engaged in unlawful activity. <u>Id.</u> at 526 ("Section 776.013 thus altered the law so that now there is 'no duty to retreat' under a broad array of circumstances."). In such a case a defendant is entitled to, upon request, the common law instruction which includes a duty to retreat unless one cannot safely do so. <u>Id.</u>

Because Woods admitted to being engaged in unlawful activity, he argued this instruction should have been given. And he argues because it was not given, even if the jury believed his account, an acquittal was extremely unlikely because the instruction given conveys the impression deadly force can only be used when in a lawful position.

The postconviction court denied the claim. It found that because the jury determined the murder was premeditated, Woods' self-defense claim was necessarily rejected and he could not show prejudice from the error. This appeal followed. We affirm, but on different grounds.

. . .

<u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), governs ineffective assistance of counsel claims. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694, 104 S. Ct. 2052.

Even if Woods was entitled to the common law self-defense instruction, a conclusion we need not reach, his claim fails because he cannot demonstrate prejudice. See Boone v. State, - - - So.3d - - - , 2020 WL 4524638, 45 Fla. L. Weekly D1869 (Fla. 1st DCA Aug. 6, 2020) (denying relief after finding the jury instruction the defendant argued his counsel should have requested would not have changed the outcome of the proceeding); Martinez v. State, 655 So. 2d 166, 169 (Fla. 3d DCA 1995) ("The question for our review is whether his counsel's failure to request that instruction was so prejudicial that had the request been made the outcome of the trial would have been different."). The jury found Woods guilty of robbery and, therefore, found Woods had criminal intent to use force in furtherance of an unlawful taking. There was an express finding that Woods carried a firearm and shot Valencia during the commission of the robbery. That is, the jury found Woods shot Valencia as part of his commission of a robbery and not in self-defense. There is no reasonable probability the jury accepted his account of self-defense but, due to the jury instructions, felt compelled to find him guilty of murder.

Ex. L; Woods v. State, 306 So. 3d 1236, 1236-38 (Fla. 1st DCA 2020).

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground One is denied.

**B. Ground Two**

Petitioner argues that his trial counsel was ineffective by failing to request the use of the standard jury instruction on the taking of property occurring as an afterthought to the use of force or violence against the victim. Doc. 1 at 7. He contends that this standard instruction was central to his defense and without it, "the remaining robbery instructions that were given to the jury did not adequately explain that a jury could not convict Woods if it determined the taking of the property occurred as an afterthought to the use of force or violence against [the victim]." Doc. 4 at 23.

Petitioner, through counsel, raised this claim in his Rule 3.850 motion. The state court held an evidentiary hearing, after which it denied the claim, reasoning as follows:

> In Ground Two of his motion, Defendant argues his attorney was ineffective for failing to move for an afterthought jury instruction. Defendant contends this jury instruction would have resulted in the jury finding Defendant not guilty of robbery (Count Two). The record demonstrates that Defendant's attorney was not deficient in failing to move for an afterthought instruction. Additionally, the record shows that even if Defendant's attorney had moved for and received such an instruction, the jury's verdicts would not have changed.
>
> The afterthought jury instruction provides: "If you find that the taking of property occurred as an afterthought to the use of force or violence against the victim, the taking does not constitute robbery but may still constitute theft." Fla. Std. Jury Instr. (Crim.)

15.1; see also DeJesus v. State, 98 So. 3d 105 (Fla. 2d DCA 2012).

Defendant testified at trial. Defendant testified that he did not take anything from the victim's apartment. Defendant further testified that he did not learn that his associate, Xavier "Shaun" Davis, took anything from the victim's apartment until later that night. Defendant denied that he and Davis had any common design to rob the victim. Defendant also denied that he had anything to do with the taking of the victim's money.

Here, it is plain that the standard jury instruction on robbery adequately covered the theory of defense. Defendant did not contend that he took the victim's property as an afterthought to the use of force. Instead, Defendant claimed he did not take anything from the victim's apartment. Believing Defendant's version of events would not have necessitated finding Defendant guilty of the lesser-included offense of theft, but would have instead necessitated finding Defendant not guilty of either robbery or the lesser-included offense of theft. Defendant's trial testimony, in which Defendant maintained actual innocence of robbery, rendered an afterthought instruction inapplicable. It is obvious that Defendant's attorney did not perform deficiently in failing to move for an afterthought instruction when such an instruction would have been fundamentally incompatible with Defendant's trial testimony. See Rigternick v. State, 193 So. 3d 846, 868 (Fla. 2016) (holding that defense counsel was not ineffective for failing to present evidence which contradicted the defendant's trial testimony).

Moreover, the jury's premeditation finding in Count One undermines any contention that the jury would have found Defendant not guilty of robbery if they received an afterthought instruction. The State presented ample evidence at trial that Defendant's

motive in murdering the victim was to steal a large shipment of high quality marijuana from the victim. The jury's finding that Defendant committed premeditated murder proves the jury simply did not believe Defendant's "drug deal gone bad" version of events. Accordingly, it is clear the jury would not have acquitted Defendant of robbery even if the trial court gave the jury an afterthought instruction.

Because Defendant can demonstrate neither deficiency nor prejudice as required under <u>Strickland</u>, this Court denies Ground Two of Defendant's motion.

Ex. H at 107-09 (internal record citations omitted).

Through counsel, Petitioner appealed the denial of his Rule 3.850 motion. Petitioner filed an initial brief, Ex. I, the state filed a response, Ex. J, and Petitioner filed a counseled reply, Ex. K. The First DCA affirmed the denial of this claim without comment. <u>See</u> Ex. L (affirming and writing only to address the first argument set forth in Ground One above).

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground Two is denied.

## C. Ground Three

According to Petitioner, his trial counsel was ineffective by failing to request the use of the standard jury instruction on an independent act. Doc. 1 at 8. He contends that without this standard instruction, "the remaining instruction[s] given to the jury did not adequately explain that Woods could not be convicted if the unlawful taking of property was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated." Doc. 4 at 27.

Petitioner, through counsel, raised this claim in his Rule 3.850 motion. The postconviction court held an evidentiary hearing and then denied this claim:

> In Ground Three of his motion, Defendant argues his attorney was ineffective for failing to request the jury instruction regarding the independent acts of another party. The independent acts jury instruction in Defendant's case would have read:
>
>> If you find that the crimes alleged were committed, an issue in this case is whether the crimes of robbery and burglary were independent[] acts of a person other than the defendant. An independent act occurs when a person other than the defendant commits or attempts to commit a crime
>>
>> 1. which the defendant did not intend to occur, and

19

2. in which the defendant did not participate, and

3. which was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant.

If you find the defendant was not present when the crimes of robbery and burglary occurred, that, in and of itself, does not establish that the crimes of robbery and burglary were independent acts of another.

If you find that the crimes of robbery and burglary were independent acts of Xavier Davis, then you should find Carl Woods not guilty of the crimes of robbery and burglary.

See Fla. Std. Jury Instr. (Crim.) 3.6(l).

At trial, the State presented overwhelming evidence tending to show Defendant stole marijuana and cash from the victim. On these facts, it is clear that an independent act instruction was inapplicable. See Ray v. State, 755 So. 2d 604, 609 (Fla. 2000) ("Where, however, the defendant was a willing participant in the underlying felony and the murder resulted from forces which [defendant and his accomplice] set in motion, no independent act instruction is appropriate."). Indeed, the jury found Defendant guilty of both premeditated murder and felony murder, which demonstrates the jury's ultimate conclusion that Defendant traveled to the victim's home with the conscious intent to murder and steal from the victim. As such, an independent act instruction would not have made any difference in the trial's outcome.

> Thus, the record shows that Defendant's attorney did not perform deficiently by failing to move for an independent act instruction. Moreover, the record further shows that even if the trial court had given such an instruction, the jury's verdicts would not have changed. Accordingly, this Court denies Ground Three of Defendant's motion.

Ex. H. at 109-110 (internal record citations omitted).

Through counsel, Petitioner appealed the denial of his Rule 3.850 motion. Petitioner filed an initial brief, Ex. I, the state filed a response, Ex. J, and Petitioner filed a counseled reply, Ex. K. The First DCA affirmed the denial of this claim without comment. See Ex. L (affirming and writing only to address the first argument set forth in Ground One above).

The Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground Three is denied.

### D. Ground Four

Petitioner argues that the cumulative effect of his trial counsel's errors rendered his trial unfair. Doc. 1 at 10. Petitioner raised this claim, through counsel, in his Rule 3.850 motion. After conducting an evidentiary hearing on

the three ineffective assistance of counsel claims, the postconviction court

denied the cumulative error claim:

> In Ground Four of his motion, Defendant asserts cumulative error. However, "[c]laims of cumulative error do not warrant relief where each claim of error is either meritless, procedurally barred, or does not meet the <u>Strickland</u> standard for ineffective assistance of counsel." <u>Schoenwetter v. State</u>, 46 So. 3d 535, 562 (Fla. 2010) (internal quotation omitted). As such, Defendant's cumulative error claim necessarily fails and this Court denies Ground Four of Defendant's motion.

Ex. H at 110.

Through counsel, Petitioner appealed the denial of his Rule 3.850 motion.

Petitioner filed an initial brief, Ex. I, the state filed a response, Ex. J, and

Petitioner filed a counseled reply, Ex. K. The First DCA affirmed without

comment. <u>See</u> Ex. L (affirming and writing only to address the first argument

set forth in Ground One above).

The First DCA's opinion did not acknowledge that Petitioner raised this

claim on appeal, even though it was included in his initial brief. <u>See</u> <u>id.</u> ("He

presents <u>three</u> arguments, all relating to jury instructions he claims his trial

counsel was ineffective for failing to request." (emphasis added)). Regardless,

assuming that cumulative error claims are cognizable on federal habeas review,

none of Petitioner's individual ineffectiveness claims warrant relief; thus, there

is nothing to accumulate. <u>See</u> <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117,

1132 (11th Cir. 2012). Petitioner's trial counsel's alleged errors, neither individually nor cumulatively, deprived him of a fair trial or due process. Thus, considering the record, the Court finds that Petitioner is not entitled to federal habeas relief on Ground Four.

Accordingly, it is

**ORDERED**:

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[5]

---

[5] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

3.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of February, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 2/8
c:
Carl Ezekiel Woods, #J50110
Counsel of Record